## In re VALENTINE'S ESTATE.

### In re FOOTE et al.

(Supreme Court, General Term, First Department.  February 17, 1893.)

1. EXECUTORS—FINAL ACCOUNTING—EVIDENCE.

In a proceeding by the heirs of a deceased executor and residuary legatee to compel the surviving executors to account for the balance due such decedent, testimony by one of the surviving executors that there had been a division of the mortgages belonging to the estate, of which the deceased executor received his one-third share, does not establish a final accounting and a settlement of the estate by the executors, so as to prevent the surviving executors from showing that the deceased executor had been paid more than his share of the personal estate.

2. SAME.

A statement by one of the surviving executors that certain real estate had been sold, and that the money was in bank, waiting for the heirs, does not in any way assume to represent what the interest of such heirs might be on a settlement of the estate.

Appeal from surrogate's court, New York county.

Judicial settlement of the account of Elizur V. Foote and Jane A. Stokes, as surviving executors of Henry S. Valentine, deceased.  Sarah N. Valentine and others, heirs of George W. Valentine, a deceased executor of, and residuary legatee under, the will, contested the final account of the surviving executors.  From a decree of the surrogate confirming a referee's report, that such deceased executor and residuary legatee had overdrawn his account in his lifetime, and that consequently there was nothing due to the contestants, they appeal.  Affirmed.

The contestants claimed and endeavored to prove that in September, 1884, during the lifetime of George W. Valentine, a settlement was had between himself and the two other devisees and legatees, in which all the estate which was then capable of division was divided between them after payment of the debts, and that certain real estate at Islip, L. I., afterwards sold for $20,000, and at Greenville, N. J., afterwards sold for $3,175, and a few hundred dollars in bank, were left to be distributed when converted into money.  This real estate was not sold until after the death of George W. Valentine, and it was further urged by the appellants that this accounting should begin at the settlement of September, 1884, and should not include any matters of prior date, and, upon this theory, that upwards of $20,000 still remains in the executors' hands to be accounted for.  The question of this settlement is the only point raised on this appeal.

The only witness to the alleged settlement called on the trial was the executor, Mr. Foote.  There was some testimony on the part of two of the contestants in regard to a conversation had between them and Mr. Foote subsequent to the death of George W. Valentine, in which, as they testified, Mr. Foote had made some statement from which it might be inferred that, the Islip farm having been sold, there was some money in the possession of the executors, in which the next of kin of George W. Valentine were entitled to share.  Mr. Foote was asked by the contestants: "Question. Did you and Mrs. Stokes and Mr. George W. Valentine come to a settlement in regard to the personal property of Henry S. Valentine before George's death? Answer. Yes.  Q. When was it?  A. I think, sometime in September, 1884.  Q. Is that the correct date? (Showing paper.)  A. September 20th?  Yes.  We had an accounting to that date down to Mr. Thayer's office.  Q. Did you and Mrs. Stokes and Mr. Valentine have an accounting between yourselves of the personal estate of Henry S. Valentine, down to that date? A. Yes, sir.  Q. Everything was settled between you, as regards the personal estate of Henry S. Valentine, except the Greenville and Islip property?  A. The day we had that settlement.  Q. Answer my questions.  A. On that day we made the settlement, September 20th, we had a settlement of the personal property of Mr. Valentine.  Q. Up to that date?  A. That was in bonds and mortgages to that date.  Q. And you arrived at certain sums, between you?  A. Yes.  Q. And

you settled with Mr. Valentine on that basis? A. On that basis,—of his share of some bonds and mortgages outstanding." The witness further stated: "I took my books, and went down to Mr. Thayer's. I left them there, and he made up a statement of how things stood; and Mr. Valentine wanted some money to purchase a house on 80th street, and he had to have it within a few days. We went there, and borrowed some money on a note, and paid him his share down to him, and closed the whole thing up. That closes up the personal estate, as far as the bonds and mortgages were concerned." "The amount paid upon that occasion to Mr. Valentine, as his share of the bonds and mortgages referred to, was $7,666.66." Witness further testified: "Question. I want you to explain your answer to Mr. Malcolm, when he asked you, 'And you settled with Mr. Valentine on that basis?' and you answered, 'On that basis,—of his share of some bonds and mortgages.' Answer. I settled with Mr. Valentine for his one-third share of the bonds and mortgages that we had in our possession at that time. Q. State what they were. A. There was a $14,000 mortgage, a $5,000 mortgage, two mortgages of $2,000 each, and I paid Mr. Valentine his one-third of those mortgages. I gave that to Mr. Valentine more as an accommodation. Q. You say, in answer to Mr. Malcolm, referring to the date, September 20th, as to the receipt for $7,-666, that there was a settlement between you and Mr. Valentine on that date. A settlement of what? A. A settlement of those four bonds and mortgages,—$14,000, $5,000, and two of $2,000 each, and which made $23,000. Q. That is all that is included in that settlement? A. Yes, sir. Q. Were any advances made to Mr. Valentine, if any, prior to that included in that settlement? A. No, sir; those advances were not in that $7,666. Q. Any such advances had nothing to do with that settlement? A. No, sir. (Witness is shown the answer made by him in the proceedings before the surrogate, put in evidence by Mr. Malcolm at the last hearing.) Q. What settlement do you refer to in that answer? A. That settlement refers to the bonds and mortgages which I have just referred to." The testimony of John Valentine and Joseph E. Peck, contestants, as to a conversation between them and Mr. Foote in which they allege that Mr. Foote informed them after the sale of the Islip property that there was some money in the hands of the executors, "waiting for the heirs," is contradicted by Mr. Foote: "Mr. Valentine and Mr. Peck came to 127 Canal street, where I have an office, and asked me about the sale of the Long Island property. I told them that it was sold for $20,000, and in the course of the conversation they asked me how my account stood with Mrs. Valentine and the Peck folks. They said they thought they were entitled to something out of Mr. Valentine's estate, if there was anything. I told them that Mr. Valentine's account, according to the price of the farm, was overdrawn; that Mr. Valentine's account had been overdrawn anywhere from $500 up; that I would close up the estate, and, if there was anything that they were entitled to, I would see that they were paid. John Valentine and myself had that same conversation several months before." By Mr. Malcolm: "Question. What mortgages did you say those were? Answer. A mortgage for $14,000, a mortgage of $5,000, and two mortgages of $2,000 each. Q. Were they assigned to you and Mrs. Stokes at the time of this settlement? A. About that time. Q. Before or after? A. After. Q. The $5,000 mortgage was made by Mr. Thayer? A. Yes, sir; originally by Mr. Thayer. I told Mr. Valentine on several occasions—possibly twenty times—that Mr. Valentine had overdrawn his account. Mr. John Valentine and Mr. Peck came to me at Canal street one day, and asked me about the sale of the Long Island property, just after the property had been sold, and I told them the amount of the sale; that I had the money, some of it, in the trust company; and that I was going to close up Mr. Valentine's account, and then, if there was any money due them,—meaning Mr. Peck and his brothers and sisters and Mrs. Valentine,—that they were entitled to it." Contestants, for the purpose of proving that a settlement had taken place between George W. Valentine and the executors on September 20, 1884, relied principally upon an affidavit made by Mr. Foote in a proceeding in the surrogate's court, that "the said personal estate, and every part and parcel thereof, was accordingly, in the lifetime of said George, and shortly after the death of said testator, amicably, and by common consent divided equally among the last three legatees." It also appeared from that affidavit that the property consisting of the Islip farm had not then been sold; and for that reason, and others stated in the affidavit, it was claimed that the application then made to compel the executors to account should not be granted. There was no evidence as to what was done with the application, and no order disposing of the application was produced.

Argued before VAN BRUNT, P. J., and O'BRIEN and FOLLETT, JJ.

James F. Malcolm, (J. B. Lockwood, of counsel,) for appellants.

J. Delahunty, for respondents.

VAN BRUNT, P. J.   We see no reason for interfering with the conclusion arrived at by the learned surrogate in the court below.   The testimony upon the part of the appellants, which was relied upon for the purpose of showing that there had been a final settlement between the parties of the accounts of the executors in reference to the personal estate, so that the question as to the appellants' predecessor having been paid more than his share of such personal estate could not be investigated in this accounting, seems to be entirely inconclusive, and insufficient to deprive the respondents of the right to claim upon this final accounting that such overpayment had been made.   It is true that, by taking isolated expressions from the testimony of the executors, such a conclusion might be reached; but when we consider the testimony as a whole, and the acts done, it is apparent that the claim that there was only a division of certain mortgages belonging to the estate, of which the appellants' predecessor received his one-third share, is well founded.

The testimony of the witnesses Valentine and Peck in no way conflicts with the claim now presented upon the part of the executors.   The mere statement that certain real estate had been sold, and the money was in bank, waiting for the heirs, did not in any way assume to represent what the interest of such heirs might be upon the final settlement of the estate.   The circumstance that the amount received by the appellants' predecessor, George W. Valentine, at the time of this alleged settlement, was just one third of the mortgages in question, is a much stronger circumstance against the idea of a final settlement of the accounts of the executors in respect to the share of the appellants' predecessor in the property than is the alleged admission of the executors that they were holding the proceeds of the real estate sold by them, for the heirs, in favor of such settlement.   In fact, upon a reading of the whole of the testimony, there does not seem to be any proof whatever that any such final settlement was had.   And certainly, by what, at most, are only equivocal statements of one of the executors upon the stand, the persons interested in the estate of the testator, other than the representatives of George W. Valentine, cannot be deprived of their share in this real estate.   And when these equivocal statements are explained, upon the attention of the witness being called to them, there seems to be no basis left for the claim made by the appellants.

The decree appealed from should be affirmed, with costs.   All concur.